# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| BETTY J. MARTIN, ) | |
| ) | |
| Plaintiff(s), ) | Case No. 2:14-cv-01092-MMD-NJK |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| CAROLYN W. COLVIN, ) | (Docket Nos. 15, 20) |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant(s). ) | |

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff Betty Martin's application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. Ch. 7. Currently pending before the Court is Plaintiff's Motion for Reversal and/or Remand. Docket No. 15. The Commissioner filed a response in opposition and a Cross-Motion to Affirm. Docket Nos. 19, 20. Plaintiff filed a reply. Docket No. 21. The Court held oral arguments on the motions on July 24, 2015. *See* Docket No. 27.[1]

This action was referred to the undersigned magistrate judge for a report of findings and recommendation pursuant to 28 U.S.C. 636(b)(1)(B)-(C) and Local Rule IB 1-4.

. . .

. . .

---

[1] Citations to the recording of the hearing are noted by "Hearing Tr." followed by the relevant time of the hearing, as no written transcript has been prepared.

## I. STANDARDS

### A. Judicial Standard of Review

The Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are deemed conclusive if supported by substantial evidence. *Id.* To that end, the Court must uphold the Commissioner's decision denying benefits if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. *See, e.g., Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In determining whether the Commissioner's findings are supported by substantial evidence, the Court reviews the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *See, e.g., Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

Under the substantial evidence test, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2003). When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Consequently, the issue before this Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

It is incumbent on the ALJ to make specific findings so that the Court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial

evidence. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See, e.g., Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B.  Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. *See, e.g.*, 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. § 404.1520). If at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made and no further evaluation is required. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see also* 20 C.F.R. § 404.1520(a)(4). The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. § 404.1572(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities

that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. § 404.1521; Social Security Rulings ("SSRs") 85-28 and 96-3p.[2] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity. 20 C.F.R. § 404.1520(e). The residual functional capacity is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; SSRs 96-4p, 96-7p. To the extent that statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-3p, 96-5p, and 96-6p.

---

[2] SSRs constitute the Social Security Administration's official interpretations of the statute it administers and its regulations. *See Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Social Security Act and regulations. *Bray*, 554 F.3d at 1224.

The fourth step requires the ALJ to determine whether the individual has the residual functional capacity to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565. If the individual has the residual functional capacity to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II.   BACKGROUND

### A.   Procedural History

On February 5, 2011, Plaintiff filed an application for a period of disability and disability insurance benefits alleging that she became disabled on October 29, 2010. *See, e.g.*, Administrative Record ("A.R."), at 149-56. Her claims were denied initially on September 6, 2011, and upon reconsideration on December 7, 2011. A.R., at 96-100, 104-106. On January 18, 2012, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). A.R., at 107-108. On August 15, 2012, Plaintiff, her attorney David Moore, and vocational expert Carly Coughlin appeared for a hearing before ALJ Barry Jenkins. *See* A.R., at 28-64. On September 12, 2012, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability, as defined by the Social Security Act, from October 29, 2010, through the date of his decision. A.R., at 13-27. The ALJ's decision became the final

decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 5, 2014. A.R., at 1-4.

On July 3, 2014, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). *See* Docket No. 1-1 (complaint). Plaintiff filed an application for leave to appear *in forma pauperis*, which the Court granted. Docket No. 2.

### B. The ALJ Decision

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520, and issued an unfavorable decision on September 12, 2012. A.R., at 13-27. At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through May 31, 2014, and has not engaged in substantial gainful activity since October 29, 2010. A.R., at 18. At step two, the ALJ found that Plaintiff has the following severe impairments: essential hypertension and pulmonary hypertension. A.R., at 18-19. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. A.R., at 19.

The ALJ found that Plaintiff had the residual functional capacity for light work as defined by 20 C.F.R. § 404.1567(a) except that the claimant: could never climb ropes, ladders, or scaffolds; could occasionally perform other postural activities; and must avoid concentrated exposure to chemicals and pulmonary irritants such as smoke, dust, gases, odors, fumes, and poorly ventilated areas; and must avoid concentrated exposure to hazardous machinery, unprotected heights, and operational control of moving machinery. A.R., at 19-22. At step four, the ALJ found Plaintiff able to perform her past relevant work as an administrative assistant, legal secretary, and contract clerk based on the vocational expert's testimony. A.R., at 22. Based on all of these findings, the ALJ found Plaintiff not disabled and denied her application for a period of disability and disability insurance benefits. A.R., at 22.

### III. ANALYSIS AND FINDINGS

Plaintiff raises two issues on appeal. Docket No. 15. First, Plaintiff asserts that the ALJ improperly rejected Dr. Willoughby's opinion that Plaintiff would be absent from work about three days per month as a result of medical impairments or treatment. *Id.*, at 6-9. Second, Plaintiff asserts that the

6

ALJ failed to properly evaluate Plaintiff's pain in the credibility assessment. *Id.*, at 9-13. The Commissioner disputes both assertions. Docket No. 20. The Court will address each argument below.

### A. Assessment of the Treating Physician's Opinion

Plaintiff first argues that the ALJ improperly rejected Dr. Willoughby's opinion that Plaintiff's impairments would cause her to be absent from work about three days per month. Docket No. 15, at 6-9. Plaintiff bases that argument on the ALJ's statement that: "neither assessment has been completely adopted as the residual functional capacity determined herein. Instead, I adopted these specific restrictions on a function-by-function basis that are best supported by the objective evidence as a whole." A.R., at 21. The Commissioner counters that, because Dr. Willoughby's opinion on absenteeism was contradicted by the other physicians, "[i]t was sufficient for the ALJ to note that he was not fully accepting any one doctor's opinion, summarize the conflicting objective medical evidence and draw the inference that Dr. Willoughby's speculation concerning Plaintiff's potential for absences was not supported by the record." *Id.*, at 6; Hearing Tr., at 3:10 p.m. (asserting that Dr. Willoughby's opinion regarding absenteeism was contradicted by at least four other doctors). The Commissioner also argues that it was incumbent upon the ALJ to resolve the inconsistency between Dr. Willoughby's opinions that Plaintiff would be absent from work "about three days per month" and that Plaintiff's impairments were not "reasonably consistent with the symptoms and functional limitations" described in his evaluation. Docket No. 20, at 6.

Generally, the ALJ should give more weight to the opinion of a treating physician than to the opinion of a nontreating physician. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (citing *Lester v. Charter*, 81 F.3d 821, 830-31 (9th Cir. 1995)). However, the case law in this district is clear that the ALJ need not accept an opinion of a physician—even a treating physician—if it is conclusory and brief and is unsupported by clinical findings. *Magallanes*, 881 F.2d at 751. If the ALJ chooses to disregard the medical opinions of a claimant's treating physician that are contradicted by another doctor, the ALJ must provide "specific and legitimate" reasons, which must be supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31.

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings." *Magallanes*, 881

1  F.2d at 751.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) .  However, the ALJ need
2  not specifically recite that he rejected a physician's opinion for enumerated reasons.  *See Magallanes*,
3  881 F.2d at 755 (holding that an ALJ judge need not cite the magic words, "I reject the physician's
4  opinion because . . ."). Rather, a reviewing court may read the findings and opinion and draw specific
5  and legitimate inferences from the ALJ's opinion.  *Id.*, at 755.

6        Plaintiff argues that the ALJ did not provide specific and legitimate reasons for rejecting the
7  portion of Dr. Willoughby's opinion regarding absenteeism. Docket No. 15; Hearing Tr., at 3:05 p.m.
8  The Court finds, however, that the ALJ provided ample reasons to support his rejection of Dr.
9  Willoughby's opinion on absenteeism.  First, the Court notes that the Social Security regulations do not
10 state that if an ALJ affords significant weight to a treating physicians's opinion, the ALJ must adopt the
11 physician's findings in its entirety. Here, the ALJ stated that he gave significant weight to the statements
12 from Dr. Willoughby, as well as the pulmonary consultive examiner, Dr. Prabhu.  *See* A.R., at 21.  The
13 ALJ noted that the opinions were made by physicians who personally examined Plaintiff and both
14 assessed Plaintiff of being capable of performing a range of sedentary work. A.R., at 21.  However, the
15 ALJ did not fully adopt either Dr. Willoughby's or Dr. Prabhu's opinions. A.R., at 21.

16       Second, the ALJ examined the medical evidence that was inconsistent with Dr. Willoughby's
17 opinion on absenteeism. A.R., at 21. Generally, the more consistent an opinion is with the record as a
18 whole, the more weight the ALJ will give that opinion. 20 C.F.R. § 404.1527(c)(4).  Here, the ALJ put
19 forth a detailed summary of the facts and noted the conflicting medical evidence. The ALJ reviewed
20 Plaintiff's medical records and explained that Plaintiff had experienced many of the same symptoms
21 before her alleged disability onset date that she now alleges to be disabling. A.R., at 20-21. Specifically,
22 the ALJ noted that Plaintiff's allegedly disabling impairments began when Plaintiff was working. A.R.,
23 at 21. The ALJ highlighted the fact that Plaintiff stopped working due to a business-related layoff rather
24 than because of her allegedly disabling impairments. A.R., at 21. Further, the ALJ noted that Plaintiff's
25 primary symptoms of dizziness/vertigo were present at approximately the same level prior to the alleged
26 onset date. A.R., at 21. Thus, the ALJ found that "[a] reasonable inference, therefore, is that the
27 claimant's impairment(s) would not prevent the performance of that job, since it was being performed
28 adequately at the time of the layoff despite a similar medical condition." A.R., at 21. As such, the ALJ

provided legally sufficient reasons to support his rejection of Dr. Willoughby's opinion on absenteeism.

Since there is substantial evidence in the record to support the ALJ's determination, the Court will not disturb the ALJ's decision. *See Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the decision where the evidence is susceptible to more than one rational interpretation"). Accordingly, the Court finds that the ALJ did not commit reversible error in partially discounting Dr. Willoughby's opinion.

### B.     Credibility Assessment

The ALJ is required to engage in a two-step analysis to evaluate credibility: (1) determine whether the individual presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of pain or other symptoms alleged; and, (2) if the individual has satisfied the first step of the test with no evidence of malingering, the ALJ may only reject the individual's testimony about the severity of the symptoms by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).[3] To support a finding of less than fully credible, the ALJ is required to point to specific facts in the record that demonstrate that the individual's symptoms are less severe than he claims. *Id.*, at 592. "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citations omitted).

. . .

---

[3] The Commissioner asserts that the Ninth Circuit's "clear and convincing" standard "exceeds the requirements set forth by Congress and by the Commissioner at the behest of Congress and would appear to be improper." *See* Docket No. 20, at 8. The Commissioner fails to show that the relevant Ninth Circuit authority has been overruled, however, so this Court continues to apply the standard adopted by the Ninth Circuit. *See, e.g.*, *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue . . . Binding authority must be followed unless and until overruled by a body competent to do so").

Plaintiff contends that the ALJ did not provide clear and convincing reasons for rejecting her testimony regarding her subject symptoms. Docket No. 15, at 11. Plaintiff argues that the ALJ improperly assessed her subjective symptom testimony in assessing the residual function capacity. *Id.*, at 12. Plaintiff argues that the ALJ failed to provide sufficient rationale for his decision to find Plaintiff not fully credible and that the ALJ's decision lacks the support of substantial evidence. *Id.*, at 11. Plaintiff further asserts that the ALJ's rejection of her testimony appears to be based on the lack of objective medical evidence supporting it, which Plaintiff asserts is an insufficient basis on which to make an adverse credibility finding. *Id.*, at 12. Lastly, Plaintiff asserts that her testimony regarding her daily activities did not constitute a sufficient basis to make an adverse credibility finding because Plaintiff contends her daily activities do not indicate the ability to perform work on a full-time, competitive basis. *Id.*, at 12.

The Commissioner argues that the ALJ provided valid and sufficient bases for finding Plaintiff not fully credible in accordance with SSR 96-7p. *See* Docket No. 20. In particular, the Commissioner asserts that the ALJ properly considered Plaintiff's daily activities, Plaintiff's conservative medical treatment, Plaintiff's lack of compliance with her conservative medical treatment, Plaintiff's work record, and a lack of medical evidence. *Id.*, at 7-11. The Commissioner asserts that the ALJ's findings as to each of these factors was supported by the record and that Ninth Circuit case law makes clear that they are each proper factors for consideration. *Id.* In short, the Commissioner argues that the ALJ properly evaluated Plaintiff's subjective complaints in making his credibility determination. *Id.*, at 11.

Despite Plaintiff's allegation to the contrary, the ALJ provided clear and convincing reasons for finding Plaintiff not fully credible. First, the ALJ found that Plaintiff's daily activities undermined her complaints of disability because they contradict her other testimony. A.R., at 20-21. For example, the ALJ highlighted Plaintiff's testimony that she engages in a somewhat normal level of daily activity and interaction, drives, goes grocery shopping, spends approximately 2 hours a day performing various tasks on her computer, and reads on her e-reader 2-5 hours each day. A.R., at 21. These findings are supported by the record. *See, e.g.*, A.R., at 47-50 (Plaintiff testified that sometimes she goes shopping for up to 45 minutes). The ALJ noted that this contradicted Plaintiff's testimony about her alleged dizziness that occasionally causes her to pass out and fall down. Specifically, the ALJ noted that

"despite her symptoms, however, the claimant can and does drive and go grocery shopping." A.R., at 20. Nonetheless, Plaintiff contends that the ALJ was not permitted to base an adverse credibility determination on Plaintiff's testimony regarding her daily activities because Plaintiff need not "vegetate in a dark room to qualify for benefits." Docket No. 15, at 12 (quoting *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987)). While Plaintiff may disagree with the ALJ's interpretation of the record, the ALJ was permitted to make an adverse credibility determination based on Plaintiff's testimony of her daily activities as contradicting her other testimony.[4] *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("To find the claimant not credible the ALJ [may] rely . . . conflicts between [the claimant's] testimony and [the claimant's] conduct, or on internal contradictions in that testimony."). *See also, Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (finding that the ALJ properly discredited plaintiff's testimony, in part, by noting the contradictions in plaintiff's testimony that he could not return to work because of pain, yet also tends to his animals and walks outdoors); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("If the claimant runs marathons, as an extreme example, an ALJ could reasonably assume that the claimant's pain is not so debilitating as to prevent him from working").

Second, the ALJ highlighted Plaintiff's conservative medical treatment and that no aggressive treatments were recommended for her conditions. A.R., at 18, 20-21. These findings are supported by the record. *See, e.g.*, A.R., at 20-21 (providing citations to myriad parts of the record). It is proper for the ALJ to consider evidence of conservative treatment to discount a claimant's testimony regarding severity of impairment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995).

---

[4] In reply, Plaintiff cites to *Soto-Olarte v. Holder*, 555 F.3d 1089, 1092 (9th Cir. 2009) which found that "once a perceived inconsistency between the written record and the oral testimony arises, the ALJ must confront the claimant with the inconsistency and if an explanation is made address that explanation." Docket No. 21, at 5. However, *Soto-Olarte* is inapposite here given that the ALJ did not perceive an inconsistency with Plaintiff's testimony and a written record.

11

Third, the ALJ noted that Plaintiff was not fully compliant with her conservative treatment. A.R., at 18. This finding is supported by the record. *See, e.g.*, A.R., at 608 ("She does not wear her CPAP as recommended). Notably, the ALJ found that proper use of the CPAP machine "should help alleviate [Plaintiff's] sleep apnea." A.R., at 18. An ALJ may consider a claimant's "failure to follow a prescribed treatment" that can improve the impairment to the extent that the person will not be disabled and thus restore the ability to work. *Orn v. Astrue*, 495 F.3d 625, 637 (9th Cir. 2007).

Fourth, the ALJ noted Plaintiff's work record. A.R., at 20-21. Specifically, the ALJ noted that Plaintiff stopped working due to a business-related layoff rather than because of the allegedly disabling impairments. A.R., at 21. This finding is supported by the record. *See, e.g.*, A.R., at 41 (Plaintiff testified that she was laid off because of "the business slowdown"). It is proper for the ALJ to consider the Plaintiff's work record in making the credibility determination. *See, e.g.*, *Rios v. Barnhart*, 215 F. App'x 681, 684 (9th Cir. 2006); *Drouin v. Sullivan*, 966 F.2d 1255, 1258-59 (9th Cir.1992).

Fifth, Plaintiff's subjective symptoms lacked support in the objective record. A.R., at 20-22. This finding of a lack of medical evidence is supported by the record. *See, e.g.*, A.R., at 20-22 (providing citations to myriad parts of the record). It appears that Plaintiff attempts to establish error by arguing that the ALJ cannot reject the claimant's credibility based solely on a lack of objective medical evidence. Docket No. 15, at 12. However, Plaintiff's own brief also discusses the ALJ's consideration of her daily activities as a factor in making the credibility determination. Docket No. 15, at 11-12. It was proper for the ALJ to consider the lack of medical evidence as part of his consideration of the entire body of evidence in making the credibility determination. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). *See also Washington v. Colvin*, 2:11-cv-860-JCM-CWH, 2014 U.S. Dist. Lexis 51848, *4 (D. Nev. Apr. 14, 2014).

Despite Plaintiff's allegation to the contrary, the ALJ provided clear and convincing reasons for finding her not fully credible. The Court finds that, while Plaintiff may not agree with the ALJ's interpretation of the record, the facts relied upon by the ALJ are supported by the record. Moreover, Ninth Circuit authority confirms that the factors considered by the ALJ are proper and that the ALJ can

make an adverse credibility finding based on those factors taken collectively. As a result, the Court finds that the ALJ's credibility finding is supported by substantial evidence.

## IV. CONCLUSION

Judicial review of the Commissioner's decision to deny disability benefits is limited to determining whether the decision is free from legal error and supported by substantial evidence. It is the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record, and resolve conflicts in the evidence including differences of opinion. Having reviewed the Administrative Record as a whole and weighed the evidence that supports and detracts from the conclusion, the Court finds that the ALJ's decision is supported by substantial evidence under 42 U.S.C. § 405(g) and that the ALJ did not commit legal error.

Based on the forgoing, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion for Reversal and/or Remand (Docket No. 15) be **DENIED** and that Defendant's Cross-Motion to Affirm (Docket No. 20) be **GRANTED**.

## NOTICE

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

IT IS SO ORDERED.

DATED: July 28, 2015.

_____
NANCY J. KOPPE
United States Magistrate Judge